Good morning, your honors. May it please the court. My name is Gregory Davis. I represent Plaintiff Appellant Foster Rich. I'd like to reserve three minutes for rebuttal, please. Your honors, there are three points that I would like to make this morning. The first is that Mr. Rich's contract claim is timely. That's not just because he alleged wrongful termination, but also because he did not suffer any compensable harm until the last day of his employment. The second point is that if given leave to amend, Mr. Rich could allege facts demonstrating that the stock plan is not a bonus program. And third, even if it were a bonus program, the stock plan is still subject to ERISA because none of the Booz Allen partners were paid for their stock until their employment had terminated. Starting with the sufficiency of the allegations, the district court here utilized an overly strict pleading standard when it required that Mr. Rich allege specifically that his termination was a breach of contract in order to state a wrongful termination claim. Yes, Judge Block? You're reading my mind. Look, the complaint clearly alleges a breach of contract and you sought to amend it, I guess, to really have it come under the umbrella of a wrongful termination claim. And it seems to me that, you know, that was really years later after discovery was closed, after it was twice amended, and years later the district court, in the exercise of its discretion, denied the application to amend to allege a wrongful termination. How can we as an appellate court really countermand that decision? It seems to be certainly within the discretion of the district court. Well, I think three reasons, Your Honor. Firstly, I would suggest and submit that the second amended complaint does state a claim for wrongful termination. Here, the district court, I believe, assumed that Mr. Rich had to expressly state that termination was a breach of contract. Mr. Rich only needs to allege facts demonstrating what is at issue in the lawsuit. And I think the district court noted that it was quite obvious that what was at issue in the lawsuit here was that Mr. Rich was suing over the loss of his termination. So under the adequate, excuse me, under Rule 8's pleading standards, I submit that he did allege a wrongful termination claim. I looked at the second amended complaint. It identified the breach of employment contract as failing to give him a fair review. It didn't suggest that his ultimate decision to resign was the breach of contract. So how do we, how do we get a wrongful termination claim from a second amended complaint? I would start by saying I believe that the totality of the circumstances and all of the allegations in the complaint, as the district court noted, made it quite obvious that he was suing over the loss of his employment. I would also submit that... There are paragraphs you would point us to in the second amended complaint, which is quite long. It is quite long, Your Honor. It is not... Whether it qualifies or satisfies other rules of federal procedure, but we'll pass that. In that enormous document, what can you point me to that really states a wrongful termination claim? Your Honors, I would point to paragraphs 434 and then 439 through 443. Most notably at paragraph 439, Mr. Rich alleges that he was not an at-will employee. He was not subject to the up or on policy and that he could not be terminated in the absence of a poor assessment. He then goes on to note that his assessment was very positive. That's paragraph 80 and that he was nonetheless terminated. I think importantly, though... Why did you seek to amend to specifically allege a wrongful termination claim if you had properly pleaded, you know, in the second amended complaint? Because the district court here, Your Honor, erred in concluding that... You could have said the district court erred in just taking your appeal from there. But, you know, when I look at the second amended complaint, I mean, following up on what Judge Clifton and Judge Yakuda pointed out, I just captured this language. It specifically alleges that BAH was obligated to provide Rich with an assessment of his performance and breach the employment contract by failing to perform its obligation to provide Rich with an assessment review. That's what you have in your second amended complaint. That's what the district court relied upon. You sought to amend years later. It just doesn't seem to ring the bell to me. And even that allegation, Your Honor, even if Mr. Rich had only alleged a breach of contract claim, as Booz Allen says, a breach of contract by virtue of an improper assessment, even that claim is timely under California law, Your Honor. And that's the McCaskey case, which is really critical on this issue. The breach of contract claim is clearly bought by the statute of limitations, isn't it? Respectfully, Your Honor, it is not. The breach of contract, the statute of limitations does not begin to run upon the breach. That is the law that the district court relied on. It is the law that Booz Allen has proffered here, and it is incorrect. Under California law, specifically McCaskey, the statute of limitations for a breach of contract claim begins to run only when the employee suffers compensable harm. And in McCaskey, as is the case here, Mr. Rich only suffered compensable harm on the last day of his employment. That's when his But that's what triggers a wrongful termination claim, the last day of employment. It's not the same for a breach of contract. It is, Your Honor. And in McCaskey, the claim in McCaskey was an interference with performance claim. There were also wrongful termination claims alleged, but the court noted that there was no inherent relationship between the two claims. The employees there suggested that the employer interfered with their ability to meet their quotas, that that alleged interference began on April 1st, 2001. They did not bring their claim until over four years later. The district court granted summary adjudication to the employer on statute of limitations grounds, and the California Court of Appeals reversed and expressly rejected the legal proposition that Booz Allen is proffering here and that the district court relied on below, which is that the statute of limitations begins to run at the breach. As the Court of Appeals noted in McCaskey, and correctly, is that Mr. Rich was entitled to nothing but perhaps nominal damages when he was first notified that he would be directed to retire. There are a number of intervening events that could have occurred that would have made that breach harmless. But importantly, and I think this went to your question, Judge Block, and I'm sorry for getting there in a circuitous manner, there's no prejudice here. If Mr. Rich is required to expressly allege that his termination was also a breach, there's no prejudice. And that's because the case that's going to go to the trier of fact here is going to be a very simple one. Was Mr. Rich terminated for not complying with the upper arm policy, a policy from which he was contractually exempt? He wasn't terminated, just to get things straight. He resigned, correct? No, Your Honor. Under California law, and this is the Romano- Are we talking about constructive discharge? Or was he actually fired? I'm not submitting that it's constructive discharge, Your Honor. That would be the Mullins case. This is just like Romano. In Romano, the employee was told, for whatever reason, we're going to terminate you, three years hence, two and a half years hence, unless you choose to retire. And you can either get your benefits or not get your benefits. And was he told that he would be terminated unless he retired, your client? I believe so, Your Honor. I believe the indication, as it was here, which is that you can either retire and get your retirement benefits or not retire and likely be terminated and get an altogether different package. There, the California- And they told him he would likely be terminated? Or did they tell him he had to turn his program around or whatever it was? I'm sorry, are we discussing Romano or this case, Your Honor? This case, sir. No, Your Honor. The implication was always either you comply with the direction to retire or you can be counseled on. That was the pattern of practice of Booz Allen, and that's what Mr. Rich understood it to be. I didn't understand that. Could you repeat that? What were the choices he was given when he had the performance review? He could either begin a retirement process or the possibility would be that he would be counseled on, which is the language that Booz Allen used for have your employment terminated. But getting back to what this trial would be and why there is no prejudice, this trial would be about whether Booz Allen terminated his employment or directed that he be retired for not complying with the upper arm policy or for some other reason. And all the discovery on those issues has been completed. There's been discovery about the documents that Mr. Rich can tend to make up his employment contract. There's been discovery on what Mr. Rich contends are the limitations on Booz Allen's right to terminate his employees. And there's been discovery on why Mr. Rich was in fact directed to retire. There's nothing more that Booz Allen would possibly need to adequately defend this lawsuit, and I suggest that it should go to the jury, Your Honor. I see that I only have a few minutes left. I would like to move to the ERISA claim, if that's okay. The district court dismissed the ERISA claim with prejudice, and this court reviews that determination de novo. And it reverses unless it's clear that Mr. Rich can't add any allegations to state a claim. Here I would submit that reversal is appropriate because Mr. Rich can certainly allege facts demonstrating that the stock plan is not a bonus program, but instead is akin to a mandatory deferred compensation program that had as its purpose the funding of Booz Allen's capital needs through employee contributions in lieu of outside financing. And that that was the primary purpose isn't even subject to reasonable dispute because Doug Swenson, an officer from Booz Allen, admitted as much. This is at ER 490. He says, and I quote, the primary purpose of the stock program is to provide capital to the firm. That was reiterated by Paul. How does that strengthen your case? How does that make this a retirement plan, an ERISA plan? It may not show that it's a retirement plan, but it certainly demonstrates that the court was incorrect when it concluded this was a bonus program. All that Mr. Rich needs to show to demonstrate that the stock plan is subject to ERISA is that as a result of the plan's surrounding circumstances, there was a deferral of income until the termination of employment. And he certainly can do that. Mr. Rich will allege that Mr. Anderson in a 1995 memo, this is at ER 462, he indicated that partners are, and I quote, expected to hold their shares until they leave the firm, end quote. That's exactly what Booz Allen partners did. Mr. Rich, if given leave, will allege that the entire reason that all of the Booz Allen partners held onto their stock is because that was the manner that the plan was administered and that was the manner that the plan was communicated to them. And those allegations alone are sufficient to demonstrate that the stock plan is a pension plan irrespective of whether it's considered a bonus program. What is the proper standard to employ in determining whether it is an ERISA plan or not? There are a number of cases out of circuit that talk about the totality of six circumstances, et cetera. There's some other language here about the primary purpose of the plan is the main focus. I'm just curious as to what the standard is. And that standard is a matter of law. Can it not be applied by the district court as a matter of law by balancing whatever factors there are or by focusing on what might be the primary purpose of the plan? Which are the dominant factors here? Your Honor, I certainly think that a district court on a motion to dismiss on certain alleged facts could determine that a plan is not subject to ERISA. The question is whether it is clear. Well, what's the test to apply? I would submit that for the deferral of income, there is no test. You look at the surrounding circumstances. And I understand that the district court here identified factors from other cases, but there is no test. So are you saying any plan that results in income being paid later is an ERISA plan? Is that what you would... Absolutely not, Your Honor. What would you say is the test? For the deferral of income prong, there is a provide retirement income prong here, but I won't address that. For the deferral of income prong... Any deferral of any income that suffices as a matter of law as the proper standard that we should employ in the Ninth Circuit? Certainly not, Your Honor. If it's mere happenstance or if it's the subjective foibles of the plan participants that result in the deferral, then it's not an ERISA plan. It's an ERISA plan if the deferral is a result of the way that the plan was administered or the way that the plan was communicated. Is there any Ninth Circuit law that clearly articulates the standard to be employed in terms of assessing whether something is an ERISA plan or not? No, Your Honor. If a standard is going to be made, it would be made by this court. But I would submit that this court need not do that in this case. You only need determine whether Mr. Rich can allege allegations that the deferral of income was a result of the way the plan was administered. In the Serio case, a single allegation that the employer suggested that the plan would be a good retirement vehicle was found sufficient. You seem to be suggesting that as long as there's a component of an ERISA plan that talks about deferral of income, that that would constitute an ERISA plan as a matter of law. I apologize if that's what it seems like I'm suggesting. I'm not intending to say that. What I'm suggesting... What else is necessary then? That it be an ERISA plan? What else is necessary to make it an ERISA plan, other than what Judge Block just said? Your Honor, I don't know if I could draw the line, but certainly here, the threshold is met, whatever that threshold may be. Because Mr. Rich wants to say that I pled a wrongful termination claim all along, or at least that whatever the differences were, they just went to the legal theory and not to anything important about the facts. Judge Battaglia supervised this litigation for many years and strongly disagreed. In his opinion denying reconsideration, Judge Battaglia explains that he and Judge Anello had scrutinized various iterations of this complaint four times, and each time it was alleged in this complaint was a promise to provide a review consistent with the opinion of his peers, and a breach of that promise in 2003 when the review was delivered. And I think it's very important for this Court to understand that that wasn't an oversight or bad lawyering by anyone. It was a deliberate strategic decision by Mr. Rich and his counsel. For starters, at the outset of this case, Mr. Rich wanted to allege, and did affirmatively allege in his complaint, that his retirement was actually voluntary. That was essential to federal securities claims that he brought, which are always worth an awful lot more to him than this breach of contract claim, which is kind of an afterthought because of the limit on consequential damages. He thought he would potentially have a path to recover tens of millions of dollars under the federal securities claims. And under those claims, his retirement has to be voluntary because it has to be an investment decision, capable of being influenced by the omissions and misstatements that he alleges. So he very carefully constructed this breach of contract claim so that he wouldn't have to allege it in a manner that would interfere with the voluntariness that he had to allege to sustain federal securities claims. He eventually backed away from that sort of affirmative allegation of voluntariness, but he never changed the fundamental nature of the contract claims, which were always set up in order to deflect attention away from the merits of the decision to ask him to retire, and instead onto these allegations about the process that was followed in 2003. Well, why? Because he was also alleging RICO claims and intentional interference with tort claims that were all about an allegation that the CEO of Booz Allen, Mr. Schrader, had sort of parachuted into this review process in 2003 that he says was supposed to be only about the opinion of his peer group, and had corrupted that process allegedly for personal reasons. That was what this case was about, and everything was directed at telling that story. He never wanted this case to be about the merits of the decision or about whether he had really been promised tenure. His own behavior illustrates that he obviously didn't think at the time that he had been promised tenure and that he couldn't be fired. So against that, we're asked to retire, which is what happened. So against that backdrop, I think it's really not fair to say that Judge Battaglia committed a gross abuse of discretion by refusing to give Mr. Rich leave to file a fourth amended or a fourth complaint in this case, a third amended complaint, five years into the litigation, after summary judgment has been granted against him. And, you know, you can take down the factors. Undue delay is enough to support that conclusion. The fact that it would have been the fourth complaint in the case is enough to The fact that all of the necessary facts were in his possession from the very beginning of the lawsuit under this Court's cases would be more than sufficient to justify that exercise of discretion. The district court has to be able to look at a litigant and say, what is your theory, and then design a litigation plan to test that theory, and then make a ruling. And I also, Your Honor, if there's any doubt about that, I'd like to direct the Court's opinion to dismissing the first amended complaint at a supplemental excerpt of Record 364. He says that given his experience in the litigation so far, up through two complaints, the Court has reservations about plaintiff's ability to allege in good faith specific facts that support his lawsuit. Nonetheless, the Court will allow plaintiff one final opportunity to amend his complaint as to the principal defendants. That's the sort of that a district court has to have discretion to say, particularly when it has doubts about a litigant's good faith. So your adversary seems to be very clear that under California law, that the statute of limitations really did not run here because he claims that a breach of contract claim, it's measured from the date that his employment is terminated. I don't think that's so, but you know, he was very clear about his position. What do you say about that? Well, it sounds like Your Honor has already read the cases. The Mullins and Romano cases both start in the first sentence. The termination case. By saying the legal wrong alleged here is wrongful termination. And the usual accrual rule for contract claims in California is that a claim accrues when the breach is complete. And Mullins and Romano recognize, first of all, in those cases, the legal wrong, the breach was the termination. And they also rely on two sort of exceptions or permutations to the usual rule that a breach claim accrues when it's complete. So there's a rule for anticipatory claims, right? If the time for performance hasn't come yet, then the plaintiff has an election about how he wants to treat an anticipatory repudiation. But there's no anticipatory repudiation. He's arguing that the damages didn't occur until later when he was terminated. Your Honor, paragraphs 445 to 447 of his own complaint allege affirmatively that his reputation was destroyed by this decision long before his employment. That's why he says he didn't pursue the offer that Booz Allen made in October of 2004 to reopen the decision and let him stay longer. He says that it was sort of too late because his reputation had already been destroyed and he had no desire to stay at that point. Obviously, he had a claim that he could have made even if only for equitable or injunctive relief at that point. But he alleges in his complaint that he suffered tangible damages prior to that point. Do I read the case correctly? It seems to me that he's even late under his theory by one day. Did I miscalculate that? I think that we have calculated that there was a deferral of one day. Yes, Cesar Chavez Day. He was even late under that theory as well by one day? No, there was one state holiday that takes a day out, right? So it was March 31 to April 1, but he gets credit for one day. So we would agree that if the claim accrued as of the date his employment terminated, that it would be timely by one day. But that's not when it accrues under California law. This alleged breach that he pled for very strategic reasons was complete and total as of September 2003 when the review was complete. Go to the ERISA issue. I'm just curious as to what the right standard is. Your adversary says that the deferral of income is sufficient to qualify as an ERISA plan. Essentially, that's what I gleaned from his comments. What do you say about that? And what should be the proper standard that this court should employ? Well, Your Honor, what this court has not said yet, but what other circuits have said, is that deferral of income, systematic deferral of income, which is the language of the regulation, means deferral of income with purposeful consistency. And that's the closest that the case law has come to a standard. You know, I think that Judge Battaglia was correct in his sort of overall assessment of the case law that Mr. Rich has not cited a single case from anywhere in the country, published or unpublished, that has held a plan subject to ERISA on facts that are anything like this. Your Honor's colleague in the Southern District, Judge Kaplan, recently considered this exact same Booz Allen plan and ruled that it is not subject to ERISA for the same reasons as Judge Battaglia. And the cases that they want to rely on, the Holzer case and Serio and everything else in their briefs, are about very, very different kinds of plans. So those two are about explicit income deferral plans where you can take some part of your actual vested salary, you know, that you're contractually entitled to salary, and put it into a deferral vehicle for several years. Those cases explicitly distinguish Murphy v. Inexco and Immenegger and International Paper and all of the cases that Judge Battaglia relied on and say, yes, we agree that bonus plans are different, but when it's your salary and you are explicitly deferring it, then the and the analysis is different. The other case, the... Help me with the words of the statute. I mean, how is this not literally within the term of the statute? Results in a deferral of income for periods extending to the termination of covered employment or beyond. Well, Your Honor, the Department of Labor rejected that literalist view of the statute 40 years ago and no court has ever applied it that way. For the very good reason that bonus plans like this, particularly stock bonus plans, don't implicate any of the concerns that ERISA was passed to address. ERISA is mostly about if you take something that someone is owed and then you promise to give it to them later rather than now, you need to have all kinds of protections to make sure that the plan is fully funded and that the vesting requirements are reasonable. And the Department of Labor determined that nobody ever intended for stock bonus plans or anything like them to be covered. And so it wrote that regulation that the courts have sort of uniformly interpreted. But Your Honor, I think it's worth, since my time is drawing short, I'd like to say that on one level, it doesn't matter. Even if ERISA applied here, these claims are clearly meritless under ERISA and would have to be dismissed as a matter of law anyway. So on the substantive merits, ERISA says that Mr. Rich is entitled to, quote, recover benefits due to him under the terms of his plan. That's Section 1132A1B, the claim for that he got exactly what he's due under the terms of his plan. Now, he alleges that he also has a breach of fiduciary duty claim, and that's going to solve his problem. But it is also clear that both the Supreme Court and this Court have held several times that there's no such thing as a breach of fiduciary duty claim for individual benefits under ERISA. That's Wise v. Verizon from this Court, LaRue v. DeWolf from the Supreme Court, clearly held that the only breach of that the plan itself was harmed by maladministration of plan assets. If the injury is to you individually, there is no breach of fiduciary duty claim under ERISA. And that's all that he's alleging. He's alleging that they shouldn't have cashed me out in 2007. They should have let me stay and participate in the Carlisle transaction, which, by the way, nobody knew about at that point. And that is clearly a claim for individual benefits. In fact, the Delaware Supreme Court very pointedly said on these exact facts, there is no Delaware state law breach of fiduciary duty claim here, because the essence of the claim is that you should have done something that would have that we should have done something that would have helped you but would have hurt everybody else in the plan. And there's just no such thing as a breach of fiduciary duty claim that says the fiduciary of a plan like this has to harm everybody else in order to help one person. That's the NEMAC case in the Delaware Supreme Court. So to escape that case, he repleads these claims under ERISA in the second amended complaint because the NEMAC decision has come down. But he's equally trapped under ERISA because there's just no such thing as a breach of fiduciary duty claim for individual benefits under ERISA. And even if that weren't true, both of these claims are clearly time barred. He agrees that the statute of limitations for ERISA claims is borrowed from He says that the, oh yes, but the accrual rule is federal. But if there's one thing that we all know in this case, it's that federal accrual principles don't help him, right? The whole point of the Mullins and Romano cases from the California Supreme Court was rejecting for wrongful termination claims what otherwise would have been federal accrual principles that absolutely doom his claim. Now, the ERISA cases apply that broader federal accrual jurisprudence. So Wise v. Verizon and the Wetzel case that Mr. Rich cites in his brief. And what they say is that an ERISA claim for prospective benefits vests when your assertion or claim for those prospective benefits is clearly and unequivocally denied. Both of those cases are claims for sort of ongoing future disability benefits. And this court held that that claim vests and the clock starts ticking as soon as the employer says unequivocally we're not going to pay you that in the future. So when did Mr. Rich have that kind of notice? Well, he knew in September 2003 that he was being asked to retire in a year or two and that then there would be a two-year period and that therefore he would be cashed out in sometime in 2007. He knew that back in 2003 and the statute of limitations is three years. If you want to give him the benefit of the doubt and say he didn't know it for sure until he actually retired in March of 2005, it's still time barred because three years from March of 2005 is March of 2008 and he filed April 1, 2009. So the claim for benefits is clearly time barred. Again, he says maybe I can escape that with a claim for breach of fiduciary duty, which he says is six years, but it's not. If you read the statute closely, 29 U.S.C. 1113 says this is a very unusual limitation statute. It says a breach of fiduciary duty claim under ERESA accrues and the clock starts ticking at the earlier of six years from the last act constituting the violation or three years from when the plaintiff knows the facts constituting the violation. Well, again, when does he know the facts constituting the breach of the recommendation to retire somehow? Then he knew that back in September 2003. We know that. If he's claiming that it was the redemption of his stock, he knew on no later than March 25th, or I mean, yeah, the end of March 2005 that he was retiring and that the plan said in two years we can redeem your stock. Three years from that date, again, time barred. So both of the ERESA claims are meritless and time barred even if this Court had trouble with the coverage issue. I see that my time has elapsed. If the Court has no further questions. Thank you. We'll hear a rebuttal. Thank you, Your Honors. I see I have 30 seconds, so I'll keep it short. With respect to the wrongful termination claim, I think Judge Acuda's hit it right on the head. The issue here is Mr. Rich didn't suffer compensable harm until the last day of his employment. McCaskey says that equitable relief is not enough to start the running of the statutes. As to the argument that Mr. Rich got everything he was entitled to under the plan, that is incorrect. The plan here entitles Mr. Rich to book value 24 months from his termination date, March 31st, 2007. He did not get booked value. He got $147.80 per share. Less than a year later, those same shares were selling for $760-some-odd dollars. The de novo review here or the review here is whether Mr. Rich could allege a claim for RISA. He could, and I'm happy to answer any of the questions regarding why this is not time barred and why LaRue saves the claim because it's a defined contribution claim, not a defined benefit claim, but I see my time has elapsed. Thank you. Thank you, Your Honor. Thank you, counsel, for your arguments. The case just argued is submitted.
judges: Clifton, Ikuta, Block